IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**UNITED STATES OF AMERICA,**
  **Plaintiff,**

v.                         5:22-cr-50-JA-PRL

**LEWIS TINSON, JR,**
  **Defendant.**
_____/

## ORDER

  This matter is before the Court on Defendant's motion to suppress evidence seized during a search of a vehicle in which he was a passenger. (Doc. 32). Defendant argues that Officer Bledsoe unlawfully prolonged the traffic stop. On October 2, 2024, I held an evidentiary hearing on this matter where the government presented the testimony of the law enforcement officer involved in the traffic stop – Officer Bledsoe. Based on a review of the papers, applicable law, and the testimony and argument at the hearing, the Court finds that additional briefing is needed.

  Even if the police have reasonable suspicion to make a traffic stop, they cannot "unlawfully prolong a stop," without violating the Fourth Amendment. *United States v. Campbell*, 26 F.4th 860, 881 (11th Cir. 2022) (en banc). The Supreme Court addressed unlawfully prolonged traffic stops in *Rodriguez v. United States,* 575 U.S. 348 (2015). In that case, a K-9 officer pulled over a vehicle for swerving onto the shoulder of the roadway. *Id.* at 351. After writing a warning ticket and returning the license, registration, and proof of insurance to the driver, the officer made the driver and passenger wait for seven or eight minutes while he conducted a dog sniff. *Id.* at 351–52. The dog discovered drugs, and the driver sought to suppress the evidence. *Id.* at 352. On appeal, the Eighth Circuit determined

that a seven- or eight-minute delay is a permissible *de minimis* intrusion. *Id.* at 353. The Supreme Court disagreed. *Id.* at 354-57.

The Supreme Court explained that like a *Terry* stop, "the tolerable duration" of a traffic stop is determined by the stop's "'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Id* at 354 (citations omitted).  During a traffic stop, the officer's mission is to address the traffic violation warranting the stop and attend to related safety concerns. *Id.* at 354. "Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop,'" such as checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Id.* at 355. The Supreme Court explained that a dog sniff is not "fairly characterized as part of the officer's traffic mission" because it lacks "the same close connection to roadway safety as the ordinary inquiries," and is "aimed at detect[ing] evidence of ordinary criminal wrongdoing." *Id*. at 355-56. (alteration in original) (quotations omitted). On-scene investigation into other crimes impermissibly detours from the mission of the traffic stop, and "[s]o too do safety precautions taken in order to facilitate such detours." *Id*. at 356.

In *United States v. Campbell*, 26 F.4ᵗʰ 860 (11ᵗʰ Cir. 2022) (en banc), *cert. denied,* 143 S. Ct. 95 (2022), the Eleventh Circuit discussed the appropriate standard to decide prolongation cases in light of *Rodriguez*. *Campbell*, 26 F.4ᵗʰ at 881-84.  The Eleventh Circuit concluded that "to unlawfully prolong, the officer must (1) conduct an unrelated inquiry aimed at investigating other crimes (2) that adds time to the stop (3) without reasonable suspicion." *Id.* at 884.

2

Here, Defendant argues that Officer Bledsoe impermissibly spent approximately 1 minute and 56 seconds engaged in activities that were not geared toward advancing the purpose of the stop—i.e., 16 seconds making a radio call for the assistance of a K-9 unit at the traffic stop; 19 seconds in a radio call with the K-9 unit clarifying the exact location of the stop; and 1 minute 21 seconds assisting in preparing and conducting the K-9 search prior to the alert of the K-9 to the vehicle. While calling for backup (which happened to be a K-9 unit), and confirming the exact location for that backup, directly supported officer safety (*see Rodriguez*, 575 U.S. at 356 (noting that "the government's officer safety interest stems from the mission of the stop itself")), the Court has concerns about the time Officer Bledsoe spent setting up the K-9 search.

There is no dispute that when the K-9 unit arrived, Officer Bledsoe stopped writing the traffic citation, exited his vehicle, and got involved with the K-9 search. The K-9 search was clearly unrelated to the traffic stop for Ms. Fleming's suspended driver's license, and instead was aimed at investigating "ordinary criminal wrongdoing" for which he did not have reasonable suspicion. The fact that the traffic stop was not yet complete is not dispositive.  Indeed, the "critical question . . . is not whether the [unrelated inquiry] occurs before or after the officer issues the ticket . . . but whether conducting the [unrelated inquiry] 'prolongs'—i.e., adds time to—the stop." *Rodriguez*, 575 U.S. at 357. Here, it appears that Officer Bledsoe improperly prolonged the stop by 1 minute 21 seconds.

However, even if Officer Bledsoe unlawfully prolonged the traffic stop by setting up the K-9 search, the exclusionary rule is subject to exceptions and does not automatically apply. *Campbell*, 26 F.4th at 885. The Government offered uncontroverted evidence that when the K-9 unit arrived, there was no one at the scene who could lawfully drive Ms.

3

Fleming's vehicle away from the traffic stop, thus suggesting that the K-9 search could have proceeded regardless. The Supreme Court has held that there is no rational basis to suppress evidence obtained by unconstitutional methods "if the government can prove that the evidence would have been obtained inevitably." *Nix v. Williams*, 467 U.S. 431, 447 (1984).

Accordingly, by **October 15, 2024**, the Government shall file a memorandum addressing whether the inevitable discovery doctrine, or some other exception to the exclusionary rule is applicable in this case. Defendant shall file a response by **October 21, 2024**. The Court will conduct a supplemental hearing if necessary.

DONE and ORDERED in Ocala, Florida on October 7, 2024.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy